# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| LOTITA STARKS-HARRIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE No. 1:08-cv-176 |
| OFFICER CLAYTON TAYLOR, and OFFICER PHILLIP EALING | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court[1] on the motions in limine filed by Plaintiff Lotita Starks-Harris on August 26, 2009 (Docket #45) and by the Defendants Officer Clayton Taylor and Officer Phillip Ealing on August 20, 2009 (Docket #39) and September 4, 2009 (Docket #59). For the reasons provided, the Plaintiff's Motion in Limine will be GRANTED IN PART and DENIED IN PART, and the Defendants' Motions in Limine will be GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 19, 2006, Lotita Starks-Harris was shopping at a Scott's Foods grocery store in Fort Wayne, Indiana, with her identical twin sister Lolita Mims. They encountered Patricia Williams, with whom they had apparently had several disputes with in the past, as she had obtained a Protective Order against Starks-Harris on June 23, 2006. (Taylor Aff. ¶ 4; Williams

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

Dep. 23.) A confrontation ensued, during which Starks-Harris allegedly told Williams that they were going to wait outside to beat her up. (Taylor Aff. ¶ 6.) It was at that point that Williams called the police. (Taylor Aff. ¶ 6.)

Fort Wayne Police Officer Taylor was dispatched to the store, followed shortly thereafter by Officer Ealing. (Taylor. Aff. ¶ 2; Ealing Aff. ¶¶ 2, 3.) When Officer Taylor arrived, he observed Williams standing near the front entrance to the store yelling toward two African-American females (later identified as Starks-Harris and Mims), who by this time were in their car in the parking lot about to leave. (Taylor Aff. ¶ 3; Williams Dep. 21-22; Starks-Harris Aff. ¶ 4.) Williams gave Officer Taylor a copy of the protective order against Lotita Starks. (Taylor Aff. ¶ 4; Williams Dep. 23.)

After confirming the validity of Williams' protective order, Officer Taylor arrested Starks-Harris for Invasion of Privacy, Resisting Law Enforcement (Physical), and Disorderly Conduct. (Taylor Aff. ¶ 9.) Starks-Harris contends that the officers used excessive force while arresting her by cracking her collarbone, banging her face onto the pavement, and slamming the police car door on her legs (Compl.¶ 4), an assertion that the officers deny (Answer ¶ 4). Eventually a jury trial was held, and Starks-Harris was acquitted of all charges. (Certified Copy of Chronological Case Summary, *State of Indiana v. Lotita C. Harris*, Cause No. 02D04-0607-CM-004957.)

On May 20, 2008, Starks-Harris filed the instant action against the Defendants under 42 U.S.C. § 1983, alleging Fourth Amendment claims of false arrest, malicious prosecution and excessive force. (Docket # 1.) On December 17, 2008, the Defendants moved for partial summary judgment, asserting that they are entitled to judgment as a matter of law on the claims

of false arrest and malicious prosecution. (Docket # 12.) Partial summary judgment was granted on March 3, 2009, and the remaining excessive force claim was set for trial. (Docket #32.)

## II. NATURE OF AN ORDER IN LIMINE

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials." *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change." *Id.*; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion in limine is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial"). In fact, the Seventh Circuit Court of Appeals has specifically noted that "a ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer." *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Thus, a ruling on a motion in limine is not a final ruling on the admissibility of the evidence which is the subject of the motion, *see Wilson*, 182 F.3d at 570-71; rather, an order on a motion in limine is essentially an advisory opinion, "merely speculative in effect." *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

### III. THE PLAINTIFF'S MOTION IN LIMINE

#### A. *Unopposed Portions of the Plaintiff's Motion in Limine*

The Defendants did not raise any objection to paragraphs 3, 5, 6, 7, and 10 of the Plaintiff's Motion in Limine, concerning Starks-Harris' criminal record, the Fort Wayne Police Department protocol or standard operation procedures or policies, allegations that Starks-Harris is a member of a criminal gang, allegations that Starks-Harris was involved in physical altercations in the past, attorney's fees, settlement negotiations, tax considerations, and "send a message" arguments in opening or closing statements. Consequently, the Plaintiff's Motion will be GRANTED as to these matters.

#### B. *Narrative Reports of the Defendant Officers*

The Plaintiff seeks to preclude any narrative reports by Officers Taylor and Ealing or any other officers, arguing that they are biased, prejudicial, and constitute inadmissible hearsay. (Pl.'s Mot. in Limine 1-2.) The Defendants counter that the reports are admissible under the public records exception to the hearsay rule of Federal Rule of Evidence 803(8). (Defs.' Resp. to Pl.'s Mot. in Limine ("Defs.' Resp.") 2-5.) Furthermore, the Defendants also contend that the reports should be admissible for the purposes of refreshing the Officers' recollections. (Defs.' Resp. 3.)  At this juncture, the Plaintiff's Motion in Limine is GRANTED with respect to this evidence. Presumably, the narrative reports may ultimately be admissible, at least in part, under Federal Rule of Evidence 803(8), although certain hearsay statements within the reports may need to be redacted. Without having an opportunity to rule in the context of the trial, the admissibility of the documents and the prejudicial effect of the imbedded statements cannot be ascertained. Counsel are directed to confer in an effort to reach a stipulation concerning suitable

redactions. Moreover, until the Defendants have laid a proper foundation, the Officers may not use the document to refresh their recollection or read the document into evidence under Rule 803(5).

*B. The Criminal Charges Brought Against Starks-Harris*

Starks-Harris also argues that since the false arrest and malicious prosecution claims are no longer at issue, the criminal charges brought against her should be precluded as unduly prejudicial. (Pl.'s Mot. in Limine 2.) In the alternative, Starks-Harris argues that if the criminal charges against her are admitted, the Court should provide cautionary instructions to the jury explaining that she was later found not guilty. (*Id*.)

The Defendants counter that the criminal charges against Starks-Harris are admissible, arguing that "[t]he mere fact that Starks-Harris was acquitted on the criminal charges does not mean that she did not engage in conduct justifying the filing of the criminal charges against her." (Defs.' Resp. 6.) Furthermore, the Defendants claim that the charges are relevant to the jury's determination of the reasonableness of the officers' actions. (*Id*. at 7.)

The Court agrees with Starks-Harris that neither the charges brought against her, nor their ultimate resolution, should be admitted. Starks-Harris is no longer making a false arrest or malicious prosecution claim. The only issue still in dispute is whether the officers used excessive force in arresting her. *See Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); *Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007). Whether or not Starks-Harris was later charged with a crime is irrelevant when deciding whether the amount of force the Officers used in arresting her was excessive. Furthermore, significant prejudice or confusion could arise if the jury seeks to gauge the use of force at the time of the arrest to the

charges later lodged by the prosecuting attorney. Fed. R. Evid. 403.

The Defendants will, however, be permitted to testify why they arrested her, as that would be relevant to the reasonableness of the force used. Fed. R. Evid. 402; *MacGregor v. Collins*, 160 Fed. Appx. 573, 574 (9th Cir. 2005). Accordingly, the Plaintiff's Motion is GRANTED IN PART and DENIED IN PART with respect to this evidence.

### IV. THE DEFENDANTS' MOTIONS IN LIMINE

*A. Unopposed Portions of the Defendants' Motion in Limine*

The Plaintiff did not raise any objection to paragraphs 2 - 4 and 7 - 9 of the Defendants' Motion in Limine, concerning any previous incidents of alleged use of excessive force by the Officers, the Officers' disciplinary records, other excessive force, deadly force, or failure to intervene incidents, damages relating to Starks-Harris' arrest, attorney's fees, and any settlement negotiations. Consequently, the Defendants' Motion will be GRANTED as to this evidence.

*B. The Plaintiff's Acquittal on the Underlying Criminal Charges*

The Defendants also seek to preclude the admission of Starks-Harris' ultimate acquittal on the underlying criminal charges, arguing that any evidence of her acquittal is irrelevant as to whether excessive force was used in her arrest. (Defs.' Mot. in Limine Br. 2-3.) Starks-Harris counters that if the Defendants are allowed to introduce evidence of the charges filed against her, then she must be allowed to respond and show that she was eventually acquitted. (Pl.'s Resp. to Def.'s Mot. In Limine ("Pl.'s Resp.") 1.)

As previously concluded, the Defendants will not be permitted to introduce evidence of the charges later filed by the prosecuting attorney against Starks-Harris; they may only testify
6

about why they were arresting her. Since Starks-Harris only intends to show she was ultimately acquitted if the Defendants are allowed to introduce the formal charges (Pl.'s Resp. 1), it is unlikely that this remains an issue.[2] Accordingly, the Court will GRANT the Motion to clarify the record.

*C. Medical Opinions, Including Diagnosis, Course of Treatment, and Prognosis, Unless the Physician Who Generated the Reports is Called to Testify*

The Defendants also argue that any medical opinions, including, but not limited to, diagnosis, prognosis, and the recommended course of treatment should not be admitted into evidence unless the physician who generated the record is called to testify at trial. (Defs.' Mot. in Limine Br. 9.) Starks-Harris counters that she does not intend to offer "'medical opinions,'" but that she intends to testify personally as to her impressions of her own physical and mental health prior to and after the incident. (Pl.'s Resp. 2.)

To the extent that the Defendants seek to exclude medical records and any medical opinions contained in them, Starks-Harris will first have to lay a foundation for their admission, and accordingly, they will be excluded until that time. Moreover, since it has been clarified that the only health care provider who will be testifying is Andrea Moll, a physician's assistant who provided medical treatment to Starks-Harris immediately following her arrest and because the Defendants have not objected to Ms. Moll's testimony, she will be permitted to offer treating

---

[2] It is proper, nevertheless, for the Court to exclude the outcome of criminal charges in an excessive force case. *See Ochana v. Flores*, 347 F.3d 266, 272 (7th Cir. 2003) ("It was not an abuse of discretion for the court to grant the officers' motion in limine to bar . . . the disposition of the underlying criminal charges, because these were not facts within the officers' knowledge at the time of the arrest . . . ."); *see also Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir. 1990) ("[T]he mere fact that [plaintiff] was acquitted of the crime for which he was initially arrested does not lead to section 1983 liability for the arresting officer. . . . ).

7

physician-type testimony once a suitable foundation has been laid. Fed. R. Evid. 702, 703.[3]

Furthermore, Starks-Harris will be permitted to testify about what she believes to be her medical health before and after the incident. Testimony by Starks-Harris about her mental and physical health and level of pain, fear, and anxiety prior to, during, and after the incident, is not an impermissible self-diagnosis. Rather, it is simply her recounting how she personally felt, physically and mentally; testimony that is rationally based on her own perception. Fed. R. Evid. 701. *See United States v. Cravens,* 275 F.3d 637, 640 (7th Cir. 2001) (lay opinion testimony permissible to establish existence of drug or alcohol problem); *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196-98 (3d. Cir. 1995) (recognizing lay testimony as to health as "quintessential Rule 701 opinion testimony"); *Holleman v. Duckworth*, 700 F.2d 391, 395 (7th Cir. 1983) (permitting Plaintiff's testimony as to own medical symptoms). Accordingly, the Defendants' motion is GRANTED IN PART and DENIED IN PART with respect to this evidence.

*D. Evidence Regarding Causation of Plaintiff's Injuries Allegedly Resulting from the Incident Unless Such a Claim is Supported by a Medical Expert*

Furthermore, the Defendants seek to prevent any testimony from Starks-Harris that her arrest caused or contributed to any physical and mental health problems (Defs.' Mot. in Limine Br. 14.) They argue that "[m]atters regarding the causation of a medical, psychological, or psychiatric condition require expert testimony," (*Id*. at 15). *See generally Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004). The Defendants also argue that the Plaintiff failed to comply with Federal Rule of Civil Procedure 26(a)(2) and disclose the identity of any witness

---

[3] A treating physician may testify about such things as course of treatment, diagnosis, and prognosis. *McCloughan v. City of Springfield*, 208 F.R.D. 236, 242 (C.D. Ill. 2002) (*citing Sprague v. Liberty Mut. Ins. Co.*, 177 F.R.D. 78, 81 (D.N.H.1998) (collecting cases)).

who may present expert testimony. (Defs.' Mot. in Limine Br. 16.) The Defendant therefore asks the court to preclude any testimony by Starks-Harris or any other lay witness that the arrest proximately caused her present medical, psychological, or psychiatric conditions. (*Id*. at 17.)

Starks-Harris responds that since she personally experienced the physical injuries and emotional and psychological problems, she may testify about them. (Pl.'s Resp. 2.) Additionally, Starks-Harris cites several cases (*Haines v. Davies*, No. 1:07-cv-851, 2009 WL 331433, at *4 (M.D. Pa. Feb. 9, 2009); *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003); *Ngo v. Standard Tools & Equip. Co.*, 197 F.R.D. 263 (D. Md. 2000)) for the proposition (and perhaps anticipating Moll's testimony) *(see supra* note 3) that "treating physicians are allowed to testify about their treatment of the patient [without being qualified as an expert or presenting an expert report], and even as to their opinions regarding same, so long as the treating physician does not rely upon the works or efforts of other physicians." (Pl.'s Resp. 2.)

As previously discussed, Starks-Harris will be permitted to testify about her own perceptions of her physical and mental health, prior to and after her arrest. It will then be up to the jury to assess her credibility and draw any appropriate inferences. She will not, however, be permitted to opine that her arrest was the proximate cause of her mental and physical health problems or to offer, in effect, a self-diagnosis. *Cravens*, 275 F.3d at 641. ("Although a lay person may readily observe a [health] problem, the causation of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision.") *See also Korte v. Exxonmobil Coal USA, Inc*., 164 Fed. Appx. 553, 556 (7th Cir. 2006) (holding that expert testimony is needed to establish causation when the medical effects are not within the understanding of the average person); *Goffman v. Gross*, 59

9

F.3d 668, 672 (7th Cir. 1995) (holding that lay testimony is not sufficient to establish plaintiff's claim that secondhand smoke caused his symptoms). In sum, any testimony as to whether Starks-Harris' arrest was the proximate cause of her injuries can only be given by an expert. She will, however, be allowed to testify concerning her present health conditions and whether they had manifested themselves prior to the incident. The Defendants' Motion is therefore GRANTED with respect to this evidence.

*E. The Testimony of Witness Billy Elliott*

Finally, the Defendants seek to exclude certain testimony from one of the Plaintiff's witnesses, Billy Elliott, who was working as a security officer at the Scott's store on the day of the incident and allegedly observed some of the interaction between the Plaintiff and the Defendants. During his deposition in the underlying criminal case, Elliott offered his opinion that the force used by the Defendant Officers was excessive, and the Defendants anticipate that the Plaintiff will attempt to offer similar testimony from Elliott here. While the Defendants agree that Elliott is entitled to testify about what he saw and heard on the day of the incident, they assert that he is "not entitled to express opinions as to the reasonableness or unreasonableness of any force used". (Defs.' Supplemental Mot. in Limine 3.) The Defendants contend that this is "the ultimate issue for resolution by the jury after hearing testimony from all of the witnesses." (Defs.' Supplemental Mot. in Limine 3.)

The Defendants' argument has merit. The Seventh Circuit Court of Appeals has emphasized that "lay testimony offering a legal conclusion is inadmissible because it is not helpful to the jury, as required by Rule 701(b)." *United States v. Noel*, __ F.3d __, 2009 WL 2835428, at *4 (7th Cir. Sept. 4, 2009). "This is because a lay witness's purpose is to inform the

jury what is in the evidence, not to tell it what inferences to draw from that evidence." *Id*. Here, the ultimate issue that the jury will be called upon to decide is whether the Defendant Officers used excessive force against Plaintiff. *See Graham*, 490 U.S. 386; *Garner*, 471 U.S. 1; *Sallenger,* 473 F.3d at 742; *see also* Federal Civil Jury Instructions of the Seventh Circuit No. 7.08.

Therefore, while Elliott may testify about what he observed during the incident, he will be precluded from offering an opinion as to whether the Defendant Officers acted with excessive force. *See generally Norman v. City of Lorain, Ohio*, No. 1:04 CV 913, 2006 WL 5249724, at *4 (N.D. Ohio Nov. 16, 2006) ("The lay witnesses may testify as to the factual circumstances surrounding how Plaintiff was ultimately injured in this case. Generally, the court would not allow lay witnesses to provide an opinion specifically as to whether [the Defendant Officers] acted reasonably, unreasonably, or used excessive force."). Consequently, the Defendants' Motion in Limine seeking to preclude Billy Elliott from offering an opinion that the Defendant Officers acted unreasonably or with excessive force (Docket # 59) is GRANTED.[4]

## V. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion in Limine (Docket # 45) is GRANTED IN PART and DENIED IN PART, the Defendants' Motion in Limine (Docket # 39) is also GRANTED IN PART and DENIED IN PART, and the Defendant's Supplemental Motion in Limine (Docket #59) is GRANTED.

It is therefore ORDERED that counsel, those acting on behalf of the parties, and any

---

[4] To the extent, if any, that Plaintiff may seek to elicit testimony from Elliott as an expert, this too is precluded, as Plaintiff failed to disclose and qualify Elliott as an expert and no foundation has been laid to offer such an opinion.

witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury. Counsel are further ORDERED to warn and caution each and every one of their witnesses to strictly follow these instructions.

SO ORDERED.

Enter for the 11th of September, 2009.

S/Roger B. Cosbey<br>Roger B. Cosbey,<br>United States Magistrate Judge